Good morning, your honors, and may it please the court. Samantha Shea for petitioner Jose Canales Granados. This court should reverse the BIA's decision because the government has failed to prove by clear and convincing evidence that Virginia felony eluding is a crime involving moral turpitude or a CIMT. To beat a CIMT, the minimum conduct and defense needs both a mens rea of at least recklessness and reprehensible conduct that is conduct that is so bad that it Virginia felony eluding does not meet either of these elements. To be convicted of the offense, one needs to receive a visible and audible signal from law enforcement to stop, drive their vehicle, and willful and wanton disregard of the signal so as to interfere with the operation of the law enforcement vehicle or endanger the operation of a law enforcement vehicle or a person. This offense is not a CIMT for four independent reasons. First, one can be convicted if they negligently believe that the police officer pursuing them is not a police officer. Second, the willful and wanton... Don't we adopt a categorical approach here? That's correct, Judge Wilkinson. All right, well, then he was convicted of violating the felony eluding statute, correct? That's correct. Yes, we are focused on the felonies. Don't we take that as a given? We can't go behind that conviction to ask whether he did or didn't, was or wasn't aware of the signal. Oh, Your Honor, yes, we are focused on the felony eluding statute, and we are looking at the minimum conduct necessary to violate that statute. And so one of the ways someone can violate that statute with the minimum conduct is negligently believing that the police officer pursuing them is not a police officer. It says willful disregard. It's not negligent. It was willful, and he had to know the enforcement. I think the statute requires that there be a law enforcement officer giving a signal or a siren, a light or a siren, and the defendant willfully and wantonly disregarding that signal. So we assume he knew it because willfully and wantonly. You're right. The only argument I thought was whether willfully and wantonly can be read on to interference. That is, those are two separate arguments, Judge Neumann. They're separate, but the first one doesn't accept the statute. The statute says that he, that we're involved, a law enforcement officer, not a negligent or not somebody else feigning as it was a law enforcement officer, and he willfully disregarded the signal. So we can't have the aspect of the case. We know he's willfully disregarding a law enforcement signal. The question you have to ask is whether that disregard, willful disregard must involve interference with the police officer's operation or endangerment of a person, both of which I gather you would would be a moral turpitude if that were shown. Sure, Your Honor. So first, I do want to clarify that we do concede that the signal has to be from a law enforcement officer and that the person has to see the signal. He has to know it. It's willfully, right? It's willful and wanton disregard of the signal, but there doesn't need to be knowledge that it's a law enforcement officer. The person certainly has to see the signal. He violated the signal of a law enforcement officer, willfully. I don't understand why that isn't clear. I mean, this is sort of common sense. You're trying to create some hypothetical that goes beyond the plain meaning of the language? Your Honor, our position is that there is no knowledge requirement that it's a law enforcement officer. And we can also gather that from looking at the codified affirmative defense of the statute, which says that someone will not be found guilty if they reasonably believe that the person pursuing them is not a law enforcement officer. That's a defense. That defense is not involved here. We're accepting, as Judge Wilkinson pointed out, we're accepting a violation of the statute as written, a fact of conviction. So we have to understand what is the conduct that the statute covers. And it seemed to me, I thought your argument, you can make a pretty good argument on the language difficulties. But at bottom, we have to assume he violated the statute. And not that he had a defense, and not that he didn't know, and not that he wasn't one. So Your Honor, I will briefly point out that this court in consider the affirmative defense for that Maryland fourth degree burglary offense, to conclude that the minimum conduct for that offense could be violated. I thought it was a matter of Hornbook law that an affirmative defense was not an element. And one of the things, when reading I must have read the statute a dozen times, and as Judge Niemeyer points out, it's a willful and want requirement, which takes it far out of the negligent category, or far out of the recklessness, even beyond recklessness. And it seemed to me that the willful and wantonness extended to the interference and endangering element as well. At least that seemed to me the most natural reading of those three words. So as to, and of course, the Virginia courts have the final reading on this as a matter of state law, but the Virginia pattern jury instructions don't characterize the disregard of the signal and the endangering as distinct elements. And then you have the most recent Virginia case in Graves, which the element of fleeing from the traffic stop is endangering. And they don't parse these out as two different elements. They use the word so as to say this extends to interference and endanger. And I think to try to carve it out as separate elements really does some violence to the so as to language and to the Virginia case law and pattern jury instructions. That's what I see as part of your problem here. And sometimes, you know, you want to ask with respect to this kind of thing, is this somebody that Congress really would not want to be removed? Who's willfully and we have to have two CIMT convictions. Would Congress not want somebody to be removed who is willfully and wantonly violating the law enforcement signal in a way that was interfering or endangering law enforcement or other people? That would seem to me what we're trying to get at in terms of people that Congress would wish to welcome here and people in Congress would wish to remove. And these are pretty serious offenses and they have a component to them. But that's what I see as the problem. You see, you see where I'm coming from. It seems to me that there is so as to. I don't think we can use so as to to simply decouple the endangerment part of the statute from the willful and wantonly disregard. That's not, that's the linguistic problem I have. Your Honor, so with regard to the jury's instructions that you referenced, the jury instructions language tracks the plain language of the statute. And so using the term so as to and so the Oxford Dictionary defines so as to, to denote effect or consequence. And we know that it cannot mean intent or purpose as the government contends, because to violate the statute, they can't actually interfere with or endanger. They can't merely intend to interfere with or endanger. Well, but we're not, we're in, Virginia's perfectly entitled to write the statute it wants and interpret the statute the way it wants. You know, Virginia may or may not be bound by a dictionary definition, but they can write the statute this way. And so as language, it seems to me, is linkage language. And that the wanton and willfulness encompasses that. Yeah, I will also point this court to how the Virginia Appellate Courts have delineated the elements for this offense. And so you mentioned the Graves case, but the Jones case also delineates the elements of the offense. And there's a more recent appellate court decision more recent than both Jones and Graves, that cites Jones for the elements. And so the way the Virginia Court of Appeals lays out the elements in the Jones case, is that they give element two as thrives in willful and wanton disregard of the single, and three as thrives in a way that interferes with or endangers, showing that that final element does not have a mens rea requirement. And the same the same Virginia Court of Appeals en banc in Baysmore recited the instructions with the elements and it recited the instruction willfully and wantonly disregarded such a signal so as to endanger any person, etc. So in that case, the en banc Court of Appeals had it all as one element. That's correct, Judge Agee. But our argument doesn't depend on the fact that it's separated out in different, into two versus three elements, based on our... What difference does that make if the elements read on to each other? In other words, the willful and wanting disregard is limited to a circumstance, so as to, there's a limiting clause to the language that follows. And the language that follows is a physical endangerment type of language. That's correct. And so as to means with the effect of, and so... Sure, that's good enough. But so as to are good words, too. We can use those, those good English words. Yes, that is the wording the statute uses. Yeah, we don't, we're not arguing that that isn't the consequence of the willful and wanting disregard, merely that there's mens rea attached to this consequence. No, but they added that language, excuse me, but they added that language in order to narrow the number of individuals who could be charged with this. They added the affirmative defense, which is not an element, but it's still a defense. And then they added the endangerment language, which was very purposeful, that was to say that this statute is going to be directed at a particular, particularly egregious disregard of a law enforcement signal, not just any old disregard, because there may be innocent exclamations, or there may be all kinds of extenuating circumstances. But this kind of thing, where there's a disregard and an endangerment, that's, they want to limit it to the more serious offenses. And that would seem to me, a very responsible thing to do in terms of giving criminal defendants fair treatment and not just having the ordinary case where they disregard, not having that fall into this hit and run, into this felony alluding statute. Yeah, that actually goes to our other arguments for why the And with regard to endangerment, someone can be found to have endangered if they raise a mere specter of endangerment to themself, and no one else. The Court of Appeals of the Virginia Appellate Courts have recognized that the defendant counts within the definition of a person, and that a mere specter of endangerment is enough. And this is a really low standard, one that does not require imminent... Do you think they're trying to legislate against the disregarded a siren. He's trying to flee the officer. He's in an automobile, a moving automobile. He's trying to get away from the officer. The officer is trying to get to him. And as a result, he interferes or endangers a person. Do you think the legislature is seeking to protect that man under the clause endanger a person? I mean, he may be included in that But they're clearly talking about the conduct that's going on that poses a high risk of injury or death, or accidents or property damage of all kinds. And same with the interference, the interference doesn't occur, as if somebody was just misleading somebody. The interference here, they're talking about two moving vehicles, one trying to get away from the other, and purposely disregarding the light. This is a whole, this whole context that is being addressed, is fraught with danger. And to make it even more clear, the legislature says, we're excluding negligence, we're intending the more serious conduct, because negligence is a fundamental offense. So I don't know where you want to lead. Are you saying the word person is so broad, that it includes the guy fleeing, and that statue is intended to protect the guy fleeing? Is that is that the interpretation you want to give? We are not focused on the intent of the statute, but rather what the minimum conduct is. So I understand, but the minimum conduct has to be something that's rational, that's applied and has to be the core. I mean, the fringes, the Supreme Court's always excluded the fringes in the statute. Sure, Your Honor. Answer my question, do you think this statute can reasonably be read to be protecting the fleeing defendant? Yes, and that is how the Virginia Supreme Court ruled in the Phelps decision, by ruling in that case where the defendant only endangered himself. And that's the finding that the court upheld on appeal, the defendant only endangered himself, and yet they upheld their conviction. Well, then that answers that question. Anyway, if you interpret it that way, the Supreme Court of Virginia has said that's an endangerment of a person, which is, would fall into the moral turpitude notions. Well, Your Honor, I see I'm out of time, but may I respond briefly? If it's okay with the Chief, yes, sir. Yes, ma'am. Absolutely. Sure. And so our argument is that by merely raising a specter of endangerment to the defendant himself, that does not involve reprehensible conduct, especially given how low of a standard a specter of endangerment is. Again, there's no need for imminent risk, and there's no requirement that the risk be a risk of serious bodily harm. And in terms of what this looks like, in terms of examples, I do want to direct this court to page 343 of our joint appendix, and where we have the affidavit from the former Virginia prosecutor, in which he says that he successfully prosecuted defendants by just speeding, and they were convicted even though the defendant endangered only himself, there was no one else on the road, and the police themselves were not endangered. What do you do with our Tillery decision in 2012, where it says that this court has ruled that the Virginia felony allusion requires intentional conduct, and is also a crime of violence. That would indicate that the statute was aimed at particular serious, particularly serious conduct and consequences. Sure, so the analysis for the crime of violence, and a CIMT is different in that crime of violence looks at, well looked at the typical case for an offense, and whether that typical case raise a sufficient degree of risk. Whereas for a CIMT, we are again focused on minimum conduct. And just because an offense poses a significant degree of risk doesn't mean it's necessarily a CIMT. For example, we have various driving offenses that are dangerous, like DUI, reckless driving that are not CIMTs. And this court has further found that extremely dangerous offenses like offenses that have led to death, such as involuntary manslaughter are not CIMTs. With regard to Tillery, this court in Tillery did not evaluate the mens rea for felony alluding. And that's because they were focused only on the degree of risk that Virginia felony alluding posed and they never got into. And, okay, thank you. Thank you very much. But you also have some time for rebuttal. And we look forward to hearing from you Dan. Okay. Thanks, Your Honor. Ms. Freyer. Good morning, Your Honors, and may it please the court, Alison Freyer for the Attorney General. Felony alluding is categorically a crime involving moral turpitude or CIMT because it has a sufficiently culpable mens rea and sufficiently culpable conduct. First, with regard to the mens rea, the willful and wanton disregard of the signal so as to endanger or pointing out earlier, the so as to language is linking language, it links the disregard of the signal to the manner in which the defendant must strive to be convicted. And the endangerment or the interference component is precisely... Yeah, it's both linking, it's the interesting thing about that language is it's both linkage language, and it's limiting language. So it not only links the disregard to the endangerment, but it limits it to endangerment cases, which would prevent the misuse of the statute. So it seems to me a particularly strong case where you have language that both linkage language and limiting language. That means you are isolating a particular class of severely culpable offenders who demonstrate a really highest level of intentionality and the worst possible way in which the conduct brings about its result. And you step back for a minute and say, is this the kind of thing that Congress would regard as a CIMT with multiple of moral turpitude? And it seems to me the answer to that was so could Congress regard this as anything other than a crime of involving moral turpitude? I mean, the whole thing, the way in which the Virginia law is written, Congress's desire in the immigration laws and everything, it all links up. Yes, the government would agree. Not only is the language linking, but it limits the statute to extremely serious cases. It indicates that Virginia felony eluding is an incredibly serious crime. And even the minimum culpable conduct under the statute poses significant risk to officers and drivers on the road, and is therefore morally reprehensible. And this is exactly the sort of thing that Congress had in mind in crafting the phrase involving moral turpitude. The Virginia courts have always, all the cases that the parties cite in their briefs are serious cases in which the defendant was being stopped by a police officer, the person knew it was a police officer, they consciously, willfully, recklessly ignored the signal and drove away so as to endanger or interfere. And the facts of the cases really speak for themselves. There's no conviction in which the defendant merely sped a little bit on his way away from the officer, or he ran a single stop sign as he avoided the officer. There's always the arrogant recklessness, the conscious disregard of serious risks that the wanton and willful language describes are present in the driving of the presented in the state cases. And therefore, it's clear that Virginia felony looting is a serious offense that only includes morally reprehensible conduct and does not include mere traffic infractions. Let me ask you this, would you? What's your take on if you wantonly and willfully disregard an officer, such as to endanger yourself with the risk of injury or death? Is that morally reprehensible? It is. Petitioner's counsel is correct, that's included in the statute, the Virginia State Courts are clear, but it is nevertheless morally reprehensible. Because the defendant is not choosing... All life, all life, whether it's all human life that's put into danger is valuable. And we almost every moral norm aims at the protection of life. And some other things, obviously, too, but foundationally. And so your point, I gather, is that if the defendant is a human being, he deserves the same level of concern about societal norms about his own life, as well as others. And we try to protect people against harming themselves and, and causing danger to themselves. Exactly, especially when that danger may spill over into other people. The defendant himself managed to... That's another aspect, that's pretty clear. But I think the point being made was that the statute is broad enough to cover endangerment to any life, not just other person's lives. And the question whether that's a moral norm beyond just a statutory stop sign type of norm. Yes, absolutely. I think that it still violates a moral norm to put yourself in mortal danger, especially if you may harm others and in the process of doing so. Yes. Do you have anything further that you wish to add? No, if the court has no further questions, the government will rest on its briefs. Judge Niemeyer? I'm fine, thank you. Judge Agee? I'm fine as well. All right. I'm fine as well. I really want to thank you and appreciate it. And then I want to hear from the petitioner here in rebuttal. Thank you, Your Honors. I did want to expand more on our final reason for why the offense is not a CIMT. And that's because someone can be convicted if they elude in a way that merely interferes with the operation of the law enforcement vehicle without endangering anyone. And that's from the plain language of the statute. And this type of minimum conduct is actually similar to Virginia obstruction of justice, which this court ruled in Ramirez was not a CIMT. Obstruction of justice involves a lot of things. Obstruction of justice can involve encouraging somebody to not testify, to testify falsely or whatever. But here, the interference has context, has statutory context. And what we have is number one, we have a defendant who willfully and wantonly violates a signal of a law enforcement officer. We have him trying to flee. He's in an automobile, a moving automobile because he's refused to stop. The statute uses the word stop. So we assume he's moving. The police officer is moving. And here you have two cars moving in with antagonistic purposes. One's trying to get the other and the other is trying to catch up. And there's that's a height of danger. I mean, this is not just the isolated word interference from the dictionary. This is interference of an officer trying to make a stop on a highway, public highway, with respect to a guy who wantonly and willingly disregarded the order of the police officer. I don't understand how you then you might ask, well, why do you use interference and endangerment? One's incipient in that it affects the officer's performance in carrying out his duties there and endangerment might be actual endangerment. Interference is going to lead to endangerment, but I don't see how you get any real benefit by isolating interference in this case. I don't think you can isolate it. Sure. Well, the statute uses the word interfere or endanger. And I understand, but let's pick interference. Forget the endanger. He's interfering with the police officer's operation during the course of this crime, right? Sure, yes. Okay. This crime is a moving crime with a lot of physics going on. A lot of potential for danger, injury, damage. These high chase situations are featured regularly on television everybody's concerned about where this is going. We're not just talking about obstruction of justice. We're talking about interference in a highly volatile circumstance, which is physical in nature. Sure, Your Honor, and I see I'm out of time, but may I... I'm interested in hearing your response. Yeah, so we are focusing on a minimum conduct here. And so based on the plain language of the statute, the minimum conduct here is that someone could interfere without endangering. And while there may be small differences between the minimum conduct involved in obstruction of justice and interfering and eluding in a way that merely interferes, the reasoning for Ramirez is actually still on point, which is that any mere attempt to obstruct the government without some kind of aggravating elements such as use of fraud or threats... About use of force and violence and automobiles at high speeds. Well, Your Honor, we're focused... Isn't that different? Isn't that different from your broad category of just interfering like obstruction of justice? Well, here we are focused only on interference and assuming that the person doesn't endanger anyone else. And so based on that, that aggravating element is not there. And isn't it hard to envision interference without some amount of endangerment when you're disregarding a signal? Because when you say disregard a signal, the law enforcement officer, that implies that both cars are moving. Doesn't this imply that they're wanted stationary? Yes, both cars do have to be moving. But for example, someone could, even if they weren't speeding at high speeds, they could drive off a road into tall grass with the officer in pursuit. And even if there is no danger... How does that interfere with the officer's operation? Sure. That's just an effort of fleeing. It seems to me if you're going to focus on interference, the language of interference, we have to accept what it means. And it means interfering with the officer's effort to stop the other car while the officer's in a car, both moving at high speed, one with a wanton and willful disregard of the officer, and the officer with an intent to make a stop. Sure, and I will answer briefly because I see I'm out of time. Um, there's no requirement that there has to be high speeds for someone to be convicted of a looting. It can be a low speed. The question is, they're both moving, they're both moving in motor vehicles, and the interference has to interfere with the officer's effort to stop the car. And not just driving into a ditch, now he's caught. The question is the interference component. And it's hard for me to read that in context and not picture incipient danger. In the crime of violence situation, the Supreme Court makes the point in Duenas-Alvarez that we're not to imagine all of these hypothetical situations that could conceivably be possible. That we're to look at the heartland of a statute. And I suppose that it might be possible for a particularly creative person to imagine interference without endangerment. But that kind of, I think, the crime of violence warning that was issued in Duenas-Alvarez has applicability here, which is, I just don't think we can take possible imaginary instances on the far, far perimeter of a statute. I think we really have to look at the heartland of what the statute is driving at. And I will direct this court to its decision in Gordon v. Barr, where this court ruled that where the plain language of the statute is overbroad, the burden doesn't shift to the petitioner to point out a specific case. And so that that case is certainly binding on this court. So if the statute is overbroad, there doesn't need to be a specific case or a specific example of prosecution. Do you have a brief summation? We've taken a lot of your time with questions for it. I'm sorry, but that just goes to show our interest in your case. And I wondered if you had a few brief comments and summation that you wanted to make. Sure, Your Honor. We also do request that this court intends to grant the petition for review that order petitioner release from custody that he's been in detention for almost two and a half years now. All right. Well, thank you very much. Thank you both. As I said to the previous advocates, we very much regret that we can't perform our traditional Fourth Circuit greeting and thank you for the able assistance that you've given the court. But there will come a time when our traditional greeting will return. And I hope that each of you will be present. We'll be able to thank you in person. So I appreciate it. And we'll ask I'll ask the courtroom deputy to adjourn court and move us into the conferencing room. Thank you, Your Honor. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, G. Steven Agee